No. 2434

Second Circuit

---

DEMOSS v. WILSON

---

(March 14, 1928. Opinion and Decree.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Evidence—Par. 254, 256.**

Parol evidence is admissible, under allegation of error, to prove that the description of the property in a deed is erroneous.

> Armstrong vs. Armstrong, 36 La. Ann. 551.
> Gaines vs. Tidwell, 2 La. App. 12.
> Rodgers vs. Bolinger, 149 La. 545, 89 So. 688.

2. **Louisiana Digest—Appeal—Par. 625, 636.**

When the evidence is conflicting as to whether or not defendant authorized plaintiff to procure a correction deed from their common vendor correctly describing the land sold by the common vendor to defendant so as to remove a cloud on plaintiff's title caused by the deed to defendant describing

plaintiff's land instead of other land that the common vendor had sold to defendant and defendant had bought from him, the finding of the trial court will not be disturbed unless manifestly erroneous.

Appeal from the Second Judicial District Court, Parish of Bossier. Hon. E. P. Mills, Judge.

Action by C. L. Demoss against J. D. Wilson.

There was judgment for plaintiff and defendant appealed.

Judgment affirmed.

Drew and Wallace, of Minden, attorneys for plaintiff, appellee.

W. A. Mabry, of Shreveport, attorney for defendant, appellant.

REYNOLDS, J.   Plaintiff, C. L. Demoss, alleging himself to be the owner and in the actual possession of the East half of the Northeast quarter of the Southwest quarter of Section two in Township twenty-two North of Range fourteen West, in Bossier parish, Louisiana, by virtue of an act of sale thereof from J. M. Bolding recorded in book No. 46 at page 293 of the conveyance records of said parish, seeks judgment against defendant, J. D. Wilson, decreeing him to be the rightful owner of the land in question and cancelling, as a cloud upon his title thereto, a deed from the said J. M. Bolding to the defendant of the same land recorded in book 41 at page 379 of said records.

Plaintiff alleges that what Bolding intended to sell and Wilson to buy was the west half of the Northeast quarter of the Southwest quarter of said section, township and range; that after the sale to and purchase by him from Bolding it was agreed between plaintiff and defendant that Bolding should execute a deed to defend-

ant correcting the description in the deed from Bolding to him to the west half of the Northeast quarter of the Southwest quarter of said section, township and range and that thereupon defendant should relinquish his apparent title to the east half of the Northeast quarter of the Southwest quarter of said section, township and range, and that pursuant to such agreement Bolding did execute such correction deed on December 27, 1923, and is recorded in book No. 72 at page 377 of said records, and that defendant refuses to relinquish his apparent title to the east half of the Northeast quarter of the Southwest quarter and asserts ownership thereof under said deed from Bolding to him.

Defendant denied plaintff was in possession of the east half of the Northeast quarter of the Southwest quarter and denied that there was error in describing said land in the deed from Bolding to him and denied that it was Bolding's intention to sell and his to buy the west half of the Northeast quarter of the Southwest quarter and denied that the correction deed was executed at his request and alleged that it was done without his knowledge or consent.

On these issues the case was tried and there was judgment decreeing plaintiff to be the owner of the east half of the Northeast quarter of the Southwest quarter of Section two township twenty-two North Range . fourteen west, in Bossier parish, Louisiana, and, as such, entitled to the undisputed possession thereof, and ordering defendant to deliver the possession thereof to plaintiff.

Defendant appealed.

OPINION.

By act dated November 30, 1917, recorded December 1, 1917, in Book No. 41 at page 379, J. M. Bolding sold to J. D.

Wilson the east half of the Northeast quarter of the Southwest quarter of Section 2 Township 22 North Range 14 West in Bossier parish, Louisiana.

By act dated July 2, 1919, recorded July 12, 1919, in Book No. 46 at page 293, the same J. M. Bolding sold the same land to C. L. Demoss.

Bolding was an honest man and it is not contended that he intended to sell the same tract of land twice.

After his purchase Wilson, under agreement with Bolding, took possession not only of the twenty acres that he purchased but also of the other half of the forty.

After the sale from Bolding to Demoss Wilson rented from Demoss the land he, purchased from Bolding, namely, the east half of the Northeast quarter of the Southwest quarter, notwithstanding his own deed from Bolding described that land and his claim that that is what he intended to buy and Bolding to sell.

On discovery of the error in the description in the deed from Bolding to Wilson, Demoss called Wilson's attention to it and Wilson acknowledged that what he had intended to buy and Bolding to sell was the west half of the Northeast quarter of the Southwest quarter and authorized Demoss to obtain from Bolding a deed correcting the error and promised that when this was done he, Wilson, would disclaim title to the east half of the Northeast quarter of the Southwest quarter.

By act dated December 27, 1923, recorded November 14, 1924, Bolding conveyed to Wilson the west half of the Northeast quarter of the Southwest quarter of Section 2 Township 22 North Range 14 West, in Bossier parish, Louisiana, stating therein that its purpose was to correct the description of the land in the deed from Bolding to

Wilson dated November 30, 1917, recorded in Book No. 41, page —, but Wilson refused to relinquish his apparent title to the east half of the forty, denying there was error in the description of the land in the sale from Bolding to him.

The only question to be decided is, whether it was Bolding's intention to sell and Wilson's to buy the east half of the forty.

Defendant objected to the admission of parol evidence to show the intention of the parties, but we think the evidence was admissible, under the authorities above cited.

W. C. Mears testified:

"Q. Do you remember Mr. Wilson coming into the office and we discussed this question of error in the deed and he stated at that time that he had never claimed the east half (E½) of this forty acres of land and that if his deed read the east half (E½) it was in error?
"A. Yes, sir.
"Q. He made that statement?
"A. He made that statement—yes, sir.
"Q. Did he make the further statement that if he held a deed to the east half (E½) that he was willing to correct it and suggested or requested that we go to a notary to prepare the deeds and get deeds of correction, stating that just as soon as Mr. Bolding executed the deed of correction that he would then sign a quitclaim to Mr. Demoss?
"A. Yes, sir; he, stated that he would sign a quitclaim deed; when they got it in shape, that he would sign that quitclaim deed; that he did not know that he had a deed to that part of the land.
"Q. State, Mr. Mears, whether or not Mr. Wilson has ever paid any rent on this property in question to Mr. Demoss.
"A. Yes, sir; he paid the rent to me for Mr. Demoss.
"Q. What year was that?
"A. That was for 1923.
"Q. How came he to pay you that and what made you remember about that transaction?
"A. Well he came in there and told me that he wanted to pay a one-fourth

interest in a bale of cotton and laid the money there for Mr. Demoss. I thought at first that he wanted to pay an account, but he said no, that this was land rent. I asked him where he was renting land from Mr. Demoss and he told me that Bolding land. He said 'I will give him one-fourth (¼) and I want you to figure out one-fourth of the cotton and I will leave the money with you,' and he did.

* * *

"Q. Now in regard to the conversation that you had with Mr. Wilson, or that you state that Mr. Wilson had with Mr. Demoss and Mr. Wallace, in your presence out there at Plain Dealing, Louisiana, wherein you say that Mr. Wilson said that if there was an error in the description of the property that he would correct it; did he at that time mention anything about whether he owned or claimed to own the east half (E½) or the west half (W½) of the forty acre tract in question?

"A. Yes, sir; that was the question at that time; the east half (E½) and the west half (W½) was in question at that time that he made that remark; because Mr. Wilson said he didn't know that he had a deed to the east half (E½) and that if he had he was willing to make the correction."

R. E. Wyche, Jr., testified:

"Q. State whether or not at that time Mr. Wilson did not state to you that he had never claimed the east half (E½) of this forty acres of land in question and that he always claimed the west half (W½) and that if there was an error in this deed and it read the east half (E½) that he was willing to correct it?

"A. That is right."

J. L. Morgan testified:

"Q. Did Mr. Wilson ever state to you which part of the forty belonged to him?

"A. Well, he told me that he bought the west half (W½) and that old man Charlie Demoss got the other half."

O. Q. Horton testified:

"Q. State whether or not you rented land from him?

"A. Yes, sir, I rented."

* * *

"Q. You rented and farmed?

"A. Yes, sir, and farmed in 1924.

"Q. Now, then, which part of this forty acres did you rent?

"A. Well, I rented it all together—is the

way—me and my brother; he said it was his'n and Mr. Demoss.

"Q. Did he state to you at that time which part was Mr. Demoss'?

"A. Well, he told me that the east part was Mr. Demoss' and the west part was his."

R. C. Gilmer testified:

"Q. Did you ever hear Mr. Wilson make any claim to this east half (E½) of this forty prior to the time—prior to December, 1923?

"A. No, sir; he always told me that he owned the west half.

* * *

"Q. Once or more than once?

"A. No. At that time he was clearing this up. He told me I have bought the west half (W½) and I told him at that time that I thought he had bought the best half because it was two feet (2') higher than the east half (E½) and it was long ways the best piece of ground.

* * *

"Q. Do you know that he did not buy this land until November, 1917?

"A. I said that Mr. Bolding was trying to work this piece of ground over there in 1917, the spring part; then in the fall of 1917 Mr. Wilson was over there on the west half (W½) clearing it up, and he told me at that time that he had bought the west half (W½).

"Q. How came he to tell you that he had bought the west half (W½)?

"A. Because I asked him the point blank question; which part he bought; I heard that he had bought some of it; that is why."

W. H. Stroud testified:

"Q. I will ask you whether or not on that question, whether or not Mr. Wilson did not state that he owned the west half of this certain forty acres of land in question and that there was an error—if his deed read the east half (E½) it was an error and he was willing to correct it?

"A. Well, he had Mr. Wyche there correcting some papers; now whether the east or what; there were corrections made and he had Mr. Wyche make the corrections.

* * *

"Q. Do you know whether or not he instructed Mr. Wyche as to what he wanted done?

"A. He told Mr. Wyche to fix the papers and correct the title, and Mr. Demoss was to bring them out; him and Mr. Demoss and Mr. Wyche were talking."

The defendant, Wilson, flatly contradicts the testimony of these witnesses, but he admits that he rented for three years the twenty acres Demoss bought from Bolding, which was the east twenty acres, as shown by the deed from Bolding to Demoss.

He does not claim that he mistook the east half of the forty for the west half, and by renting the east half he confirmed his declarations, as testified to by the witnesses, that he was not aware the deed from Bolding to him described the east half and shows he intended to buy the west half; otherwise he would not have been renting what he thought he had bought.

The trial court accepted as true the testimony of plaintiff's witnesses and we also accept it as true.

The west half of the forty-acre tract is more valuable than the east half and a judgment that defendant was the owner of the east half would give him a record title to the whole forty acres when he only claims to own half of it and would leave Demoss without a record title to any part of the land although defendant rented the east twenty acres from him for three years.

The evidence convinces us that what defendant intended to buy and Bolding to sell him was the west half of the Northeast quarter of the Southwest quarter and when the correction deed was executed by Bolding and put on record the error in the description of the land in the deed from Bolding to defendant was corrected. Plaintiff has been in possession of the east twenty acres of the tract in the person of defendant as his tenant.

The judgment appealed from decrees that plaintiff is the owner and entitled to the east half of the Northwest quarter of the Southwest quarter of Section two Township twenty-two North of Range fourteen West and entitled to the possession thereof and is correct and accordingly is affirmed.